## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ALLEN FAMILY FOODS, Inc., *et al.*,[1] | Case No. 11-11764 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 36**<br>**Hearing Date: June 24, 2010 at 10:00 a.m.**<br>**Objection Deadline: June 17, 2011 at 4:00 p.m.**<br>**(extended to June 22, 2011 for the Committee)** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ORDERS: (A)(I) APPROVING BID PROCEDURES IN CONNECTION SALE [sic] OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (II) SCHEDULING HEARING TO CONSIDER SALE; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT PROVISIONS; (B)(I) AUTHORIZING AND APPROVING SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS; AND (C) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its proposed counsel, hereby submits this Objection (the "Objection") to the Debtors' *Motion for Orders: (A)(I) Approving Bid Procedures in Connection Sale [sic] of Substantially all of the Debtors' Assets; (II) Scheduling Hearing to Consider Sale; (III) Approving Form and Manner of Notice Thereof; and (IV) Approving Break-Up Fee and Expense Reimbursement Provisions; (B)(I) Authorizing and Approving Sale Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Assumption and Assignment of Executory Contracts; and (C) Granting Related Relief* (Dkt. No. 36) (the "Bid Procedures Motion"). In support of its Objection, the Committee respectfully represents as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's tax identification number, are: Allen Family Foods, Inc. (7949), Allen's Hatchery, Inc. (8943), and JCR Enterprises, Inc. (8322).

## PRELIMINARY STATEMENT

1.      Pursuant to the Bid Procedures Motion, the Debtors propose to sell substantially all their assets (excluding the Excluded Assets[2]) to Seaford Milling Company ("Seaford" or the "Stalking Horse Bidder") for $30 million plus certain inventory in an amount not to exceed $38 million (although the actual value of the inventory is estimated to be substantially lower), including assumption of very limited liabilities, pursuant to an abbreviated sale process. The proposed Bid Procedures are not designed to maximize the value to be received by the Debtors' estates or their creditors; nor are they designed to ensure the realization of the highest and best price for the Debtors' businesses. Rather, the Bid Procedures appear designed to dispose of the assets quickly, without regard to the many creditors that will be left without recovery under these terms. Indeed, the proposed sale will leave the Debtors standing as a non-operating shell entity with few assets and numerous liabilities, while allowing the Stalking Horse Bidder and the Prepetition Lenders to waltz away with the spoils. Thus, while the Committee understands the need for a sale of the Debtors' business, and the Committee does not object to the proposed time line for the sales process, the Committee is very concerned about where these cases are heading and the very real possibility of administrative insolvency of the Debtors' estates which will be dealt with in the Committee's objection to the proposed DIP financing.

2.      The Bid Procedures must be modified to level the playing field and provide reasonable entry to all potentially interested parties. Without such relief, the structure of the proposed Bid Procedures will prove detrimental to the Debtors' estates. Therefore, the Committee respectfully requests that the Bid Procedures Motion be denied unless the proposed Bid Procedures are modified as set forth herein.

3.      The proposed Break-Up Fee of $2,625,000 plus an expense reimbursement of an additional $600,000 are excessive and unwarranted. The Break-Up Fee

---

[2]      Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bid Procedures Motion.

must be substantially reduced to be no more than 3% of the estimated actual purchase price (the Committee has been advised that the inventory to be sold to the Stalking Horse Bidder is valued at substantially less than $38 million). An expense reimbursement capped at $600,000 would be acceptable (upon reduction of the Break-Up Fee) if the Stalking Horse Bidder were only entitled to such fees based upon reasonable documented expenses actually incurred in the proposed transaction after the submission of such invoices to the Committee after the United States Trustee for review prior to payment.

## GENERAL BACKGROUND

4. On June 9, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5. No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

6. On June 16, 2011, the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a) of the Bankruptcy Code. [Docket. No. 53]. Also on that day, the Committee selected Lowenstein Sandler PC and Womble Carlyle Sandridge & Rice, PLLC to serve as its counsel. On June 17, 2011, the Committee selected J.H. Cohn LLP to serve as its financial advisor.

## COMMITTEE'S OBJECTIONS TO THE BID
## PROCEDURES MOTION

7. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions. *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del.

1991); *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983). An expedited and truncated process that only benefits the Prepetition Lenders cannot be considered a reasonable exercise of the Debtors' business judgment.

8. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997). *See also In re Cybergenics Corp.*, 330 F.3d 548, 573 (3d Cir. 2003) (*en banc*) (debtor has a fiduciary duty to maximize the value of the bankruptcy estate). The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate. *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998). As stated in *In re President Casinos, Inc.*, 314 B.R. 784, 786 (Bankr. E.D. Mo. 2004), "[s]tructured bid procedures should provide a vehicle to enhance the bid process and should not be a mechanism to chill prospective bidders' interests." To accomplish these goals, bankruptcy courts are necessarily given discretion and latitude in conducting a sale of a debtor's assets. *In re Wintz Co.*, 219 F.3d 807, 812 (8th Cir. 2000) (stating that in structuring the sale of assets, "[bankruptcy courts] have ample latitude to strike a satisfactory balance between the relevant factors of fairness, finality, integrity, and maximization of assets"). The Committee submits that the Bidding Procedures proposed by the Debtor fail to meet the goals of the bidding process - fairness and maximization of value, and respectfully requests that the Court modify the Bidding Procedures in order to meet these goals.

9. The Committee is fully cognizant of the importance of a timely sale of the Debtors' assets to the highest and best bidder. However, the Committee is compelled to bring to the Court's attention certain objectionable aspects of the proposed Bid Procedures. The following are the Committee's specific objection points, with references to the applicable section of the Bid Procedures or the Bid Procedures Motion in which such provision is set forth:

B. **General Objections**

a. The proposed Bidding Procedures for conducting the Auction should make clear that the Debtor shall consult with

the Committee throughout the sale process and Auction. The Committee should have the right to participate in any discussions, negotiations, consultations or other decisions regarding the Bidding Procedures and/or the Auction.

b. The proposed Break-Up Fee of $2,625,000 and the proposed Expense Reimbursement of $600,000 are excessive. *See Bidding Procedures Motion,* ¶ 11; APA §6.4.3(e). No showing has been made that the award of the proposed break-up fee and expense reimbursement are an actual or necessary cost to preserve the estate as required under *Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.),* 181 F.3d 527 (3rd Cir. 1999). *See also Reliant Energy Channelview, L.P.,* 594 F.3d 200 (3rd Cir. 2010). The Break-Up Fee must be substantially reduced to be no more than 3% of the estimated actual purchase price (the Committee has been advised that the inventory to be sold to the Stalking Horse Bidder is valued at substantially less than $38 million). An expense reimbursement capped at $600,000 would be acceptable (upon reduction of the Break-Up Fee) if the Stalking Horse Bidder were only entitled to such fees based upon reasonable documented expenses actually incurred in the proposed transaction after the submission of such invoices to the Committee and the United States Trustee for review prior to payment.

c. The required initial overbid increment of $3.75 million is much too high as a result of having to cover the excessive Break-Up Fee and, therefore, should be reduced. *Bidding Requirements* at p. 2.

d. The proposed purchaser is not planning to assume any liabilities relating to any pension plans. *Bidding Procedures Motion,* ¶ 13(e)(ix); APA §1.3.9. This will likely result in an unknown amount of liability to the Pension Benefit Guaranty Corporation, further adding to the possibility of administrative insolvency in these cases. Similar issues exist concerning the termination of employees.

e. The proposed purchaser is not planning to assume any liabilities related to the Debtors' collective bargaining agreements. APA §1.3.10. Upon information and belief, the Debtors do not intend to make a proposal to their unions consistent with section 1113 of the Bankruptcy Code. Absent compliance with section 1113 or consent of the unions, the Debtors will not be able to modify or reject its collective bargaining agreements. *Bidding Procedures Motion,* ¶ 13(e)(x).

f. The Debtors have sole discretion to decide whether a bid qualifies as a Qualified Bid, *Bidding Procedures Motion,* ¶

-5-

21(b), and also to decide which bid is the "highest and best" bid, *Id.,* ¶ 21(f). The Committee must be consulted in the decision of which bids are qualified and which bid is highest and best. Later in the Bidding Procedures Motion, the Debtors have reserved the right to make such determinations, "in consultation with any statutory committee appointed in these cases," *Id.*, ¶ 21(k), but the inconsistency must be corrected so it is clear that the Debtors will consult with the Committee throughout the sale process and Auction. The Committee must have the right to participate in any discussions, negotiations, consultations, or other decisions regarding the Bid Procedures and the Auction.

       g.      Access to due diligence materials should not be limited by or conditioned on a potential bidder's pre-qualification as a Qualified Bidder. Due diligence materials should be provided to any entity expressing a bona fide interest in acquiring the Debtor's assets who enters into an appropriate confidentiality agreement and makes a reasonable showing of its ability to consummate the proposed transaction.

       h.      The Bid Procedures must expressly reserve the Committee's right to object to any attempt by the secured lenders to credit bid under § 365(k) of the Bankruptcy Code. As the Court in *In re Radnor Holdings Corp.*, 353 B.R. 820 (Bankr. D. Del. 2006), held, unless the court expressly reserves a committee's rights, the entry of an order permitting a credit bid (which the Bid Procedures allow) is tantamount to an order approving of the nature, extent and validity of the lien claim and also prevents any litigation against the lender for avoidance, reduction, recharacterization, disallowance, disgorgement, counterclaim, surcharge, subordination, marshalling or other litigation claims. *Id*. at 846. Thus, such a reservation must be included in the Bid Procedures or Court order approving of the Bid Procedures.

A.      **Objections to the Bidding Procedures**

*Participation Requirements*

       a.      The materials requested of a Potential Bidder must be provided to the Committee as well as to the Debtors and their counsel. *Bidding Procedures, Participation Requirements,* ¶¶ (i) – (iii).

       b.      The Bidding Procedures provide that each Potential Bidder must provide certain financial disclosure to the Debtors. The Potential Bidder must provide the same disclosures to the Committee. *Id.*

       c.      The requirement that the equity holders of the Potential Bidder must guarantee the sales transaction should be

eliminated.  *Bidding Procedures, Participation Requirements,* ¶ (ii).

       d.    The Committee must be consulted in connection with the Debtors' determination of whether a Potential Bidder is designated as a Qualified Bidder.  *Bidding Procedures, Participation Requirements,* ¶¶ (i) - (iii).

### Bid Requirements

       e.    The Committee must be consulted in the determination of whether a bid qualifies as a Qualified Bid. *Bidding Procedures, Bid Requirements,* first and last two paragraphs of this section.

### Bid Deadline

       f.    The Committee should be added to the list of parties that are to receive bids from any Potential Bidder.

### Due Diligence from Potential Bidders

       g.    The Debtors must consult with the Committee before determining that a bid made by a Potential Bidder is or is not a Qualified Bid.

### The Auction

       h.    The Debtors must consult with the Committee when determining which Qualified Bid reflects the highest or otherwise best offer.  *Auction Rules* at (i).

       i.    The Debtors must consult with the Committee when ascribing a value to any added, deleted, or modified provisions of a bid.  *Auction Rules* at (i).

### Other Terms

       j.    The Debtors must consult with the Committee prior to announcing any additional terms and conditions that are not inconsistent with the Bidding Procedures Order and Bidding Procedures.

       k.    The Debtors must consult with the Committee prior to determining which Bid represents the highest or otherwise best offers for such assets.

### Return of Deposit

       l.    The Bidding Procedures provide that Minimum Deposits of Qualified Bidders shall be returned within five (5) business days of the Auction.  This should be changed to five (5) calendar days.

m.     The definition of "Outside Back-up Date" should be revised to be the earlier of 25 days after "the date of the Sale Order," not "the date of the Sale Hearing."

### *Reservation of Rights*

n.     The Bidding Procedures provide that the Debtors shall consult "with any statutory committee" to reserve certain rights. This should be changed to expressly refer to the Committee that has already been appointed in these cases.

B.     **Objections to Proposed Notice of Auction and Sale Hearing**

a.     Add to ¶ 6 that all objections to the Sale must also be served upon the Committee.

C.     **Objections to the Proposed Bidding Procedures Order**

a.     The Committee does not object to the publication of the Notice of Auction and Sale Hearing; however, the Committee questions whether such Notice should be published in the Wall Street Journal as opposed to another, more cost-effective national newspaper, such as The New York Times. *Bidding Procedures Order,* ¶ 10.

b.     Cure Amount/Assignment Objections must be served on the Committee (i.e., the Committee should be added to the definition of "Notice Parties"). *Bidding Procedures Order,* ¶ 12.

c.     The Claimed Cure Amount must be held in a separate bank account. *Bidding Procedures Order,* ¶ 13.

d.     Should the Debtors, Seaford, or another Successful Bidder determine to exclude any Executory Contract or Unexpired Lease from the list of Assigned Contracts, the Debtors must file notice of such exclusion on the docket in the Debtors' bankruptcy cases in addition to sending the notices to the affected non-debtor parties. *Bidding Procedures Order,* ¶ 14.

e.     In the event that Seaford is not the Successful Bidder for the Target Assets, the Bidding Procedures Order directs the Debtors to serve a notice identifying the Successful Bidder to the non-Debtor parties to the Executory Contract or Unexpired Lease. Such notice must also be filed on the Court's docket and served via overnight mail, courier service, email or facsimile. *Bidding Procedures Order,* ¶ 15.

## RESERVATION OF RIGHTS

10.     The Committee expressly reserves its rights to raise additional or further objections to the Bidding Procedures Motion, proposed Bidding Procedures and form of Order, and Proposed APA at any time, including at the June 24, 2011 hearing on the Bidding Procedures Motion and the Sale Hearing, and to object to the proposed DIP financing and use of cash collateral.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court (i) deny the Bidding Procedures Motion or, in the alternative, modify the relief sought as necessary to incorporate the concerns and objections of the Committee set forth herein; and (ii) grant the Committee such other and further relief as the Court deems just and proper

Dated:  June 22, 2011

Respectfully submitted,
**LOWENSTEIN SANDLER PC**

Bruce Buechler, Esq.
Bruce S. Nathan, Esq.
Jeffrey D. Prol, Esq.
Suzanne Iazzeetta, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

-- and --

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

By: /s/ *Steven K. Kortanek*
Steven K. Kortanek, Esq.
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801
Telephone: 302-252-4363
Mobile: 302-521-9016
Facsimile: 302-661-7728

*Proposed Co-Counsel for the Official Committee of Unsecured Creditors*