**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ALLEN FAMILY FOODS, INC., *et al.*,[1] | Case No. 11-11764 (KJC) |
| Debtors. | (Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEN FAMILY FOODS, INC., *et al.*, Plaintiff, | |
| v. | Adv. Pro. No. 11-_____ |
| MidAtlantic Farm Credit, ACA, and John Does 1-100, Defendants. | |

**COMPLAINT FOR AVOIDANCE OF LIENS, FOR DETERMINATION OF EXTENT, NATURE, VALIDITY AND VALUE OF LIENS, TO SURCHARGE SECURED LENDERS' COLLATERAL PURSUANT TO SECTION 506(c), <u>AND FOR RELATED RELIEF</u>**

Plaintiff, the Official Committee of Unsecured Creditors ("<u>Plaintiff</u>" or the "<u>Committee</u>") of Allen Family Foods, Inc., *et al.* (the "<u>Debtors</u>"), the debtors and debtors-in-possession in the above-captioned chapter 11 cases, for and on behalf of the Debtors' estates, by way of complaint against defendant, MidAtlantic Farm Credit, ACA ("<u>MAFC</u>"), an agricultural credit association, for itself and as the agent/nominee for the lenders who made senior pre-petition secured loans to the Debtors, (collectively, the "<u>Pre-Petition Lenders</u>"), hereby alleges:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's tax identification number, are: Allen Family Foods, Inc. (7949), Allen's Hatchery, Inc. (8943), and JCR Enterprises, Inc. (8322).

## NATURE OF THE ACTION

1.      This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001 and Sections 506, 544, and 550 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") seeking (a) avoidance of liens granted by the Debtors; (b) a determination that certain assets of the Debtors are not encumbered by liens granted to the Pre-Petition Lenders; (c) a valuation of the assets not encumbered by the liens of the Pre-Petition Lenders; (d) an allocation of the proceeds of the sale of the Debtors' assets between the assets encumbered and not encumbered by the liens of the Pre-Petition Lenders; and (e) to surcharge the Pre-Petition Lenders' collateral for the costs and expenses of these chapter 11 cases pursuant to section 506(c) of the Bankruptcy Code.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. § 1334(b), and pursuant to 28 U.S.C. § 157(a) and the Standing Order In re Referral of Title 11 Proceedings to the United States Bankruptcy Judges for this District, entered by the United States District Court for the District of Delaware on September 6, 2001.

3.      This adversary proceeding is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (F), (H) and (K).

4.      In the event that any part of this adversary proceeding is found to be "non-core," Plaintiff consents to the entry of final orders and judgments by this Court, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

5.      Venue in this District is properly laid pursuant to 28 U.S.C. § 1409.

## THE PARTIES

6.      Plaintiff is the Official Committee of Unsecured Creditors of the Debtors having been duly appointed on or about June 16, 2011 by the Office of the United States Trustee for the

Region of Delaware, New Jersey, and Pennsylvania (the "United States Trustee") pursuant to Section 1102(a)(1) of the Bankruptcy Code.

7. Plaintiff has standing to prosecute this Complaint by virtue of, among other things, paragraph 21 of the *Final Order Pursuant to §§ 105, 361, 362, 363, 364 and 506 (I) Approving Post-petition Financing, (I) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Super-priority Administrative Expense Status, (IV Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* approved by this Court on July 1, 2011 (the "Final DIP Order") [D.I. 120].

8. Defendant MAFC is the agent for the Pre-Petition Lenders under certain Loan Agreements (as defined below), with places of business at West Virginia, Maryland, Delaware, and Pennsylvania.

9. John Does 1-100 are the Pre-petition Lenders and participants in the Pre-petition Loans (defined below), whose identities are unknown.

## FACTS RELEVANT TO ALL COUNTS

10. On June 9, 2011 (the "Petition Date"), the Debtors commenced their respective bankruptcy cases by filing voluntary petitions for relief under title 11 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

11. On or about January 13, 2010, Debtor Allen Family Foods, Inc. ("Allen") entered into a Second Amended and Restated Step Down Credit Agreement (as amended on June 25, 2010 and on April 8, 2011, the "Term Loan Agreement") with MAFC, individually and in its capacity as agent/nominee for a consortium of other lending institutions.

12. Pursuant to the Term Loan Agreement and that certain Second Amended and Restated Promissory Note dated as of June 25, 2010 (as amended, the "Term Loan Note"), MAFC extended a term loan facility to Allen in the original principal amount of $25,000,000

(the "Term Loan"), with the other Debtors unconditionally guaranteeing the obligations under the Term Loan Agreement and Term Loan Note..

13. As of the Petition Date, approximately $23,000,000 was outstanding under the Term Loan Note.

14. MAFC also made available a revolving line of credit to Debtor Allen's Hatchery Inc. ("Allen's Hatchery") in the maximum principal amount of $55,000,000 (the "RLOC" and together with the Term Loan, the "Pre-petition Loans") pursuant to that certain Second Amended and Restated Prepay and Working Capital Revolving Credit Agreement dated January 13, 2010 (as amended on June 25, 2010 and on April 8, 2011, the "RLOC Agreement" and, together with the Term Loan Agreement, the "Loan Agreements"), and that certain Working Capital Revolving Promissory Note dated as of June 25, 2010 (as amended, the "RLOC Note" and, together with the Term Loan Note, the "Notes"). The other Debtors unconditionally guaranteed the obligations under the RLOC Agreement and RLOC Note.

15. As of the Petition Date, the aggregate outstanding principal and accrued interest under the RLOC Note was approximately $59,122,307.

16. According to the Loan Agreements, the Pre-petition Loans were scheduled to mature on June 1, 2011. On June 1, 2011, the Debtors executed a forbearance agreement with MAFC regarding various default conditions under the terms of the Loan Agreements, including an extension of the maturity date.

17. Debtor Allen's Hatchery and Debtor Allen entered into a Security Agreement dated as of December 15, 2008, as amended by a First Amendment dated as of February 25, 2008, and further amended by a Second Amendment dated April 13, 2009, a Third Amendment dated January 13, 2010 and a Fourth Amendment dated as of June 25, 2010, and Debtor JCR Enterprises, Inc. ("JCR") also entered into a Security Agreement dated as of February 28, 2008, as amended by a First Amendment on January 13, 2010 whereby each Debtor allegedly granted a security interest to the Pre-Petition Lenders in, to and under the following (collectively, the "Collateral"):

(a) all inventory in all of its forms, including, without limitation, (i) all grain and feed, all pre-paid grain and feed, livestock, eggs, dressed poultry inventory, vaccines and packaging inventory, (ii) all raw materials and work in progress therefore, finished goods thereof and materials used or consumed in the manufacture or production thereof, (iii) all goods in which any Debtor has an interest in mass or a joint or other interest or right of any kind (including, without limitation, goods in which any Debtor has an interest or right as consignee), and (iv) all goods which are returned to or repossessed by any Debtor, and all accessions to, products of and documents for any of the foregoing, in each case wherever located;

(b) all accounts, contract rights, chattel paper, instruments, documents, whether or not arising out of or in connection with the sale or lease of goods or the rendering of services and all rights now or hereafter existing in and to all security agreements, guaranties and other agreements securing or otherwise relating to any such accounts, contract rights, chattel paper, instruments and documents;

(c) all farm products in all of its forms, including, without limitation all grain and feed, all pre-paid grain and feed, livestock, eggs, dressed poultry inventory, vaccines and packaging inventory, and all accessions to, products of and documents for any of the foregoing, in each case wherever located;

(d) all books and records in whatever form (together with all related software) relating to, or used or useful in connection with, any Collateral; and

(e) all proceeds of any of the foregoing (including, without limitation, proceeds which constitute property of the types described in the foregoing clauses and, to the extent not otherwise included, all payments under insurance (whether or not the Association is the loss payee thereof), or any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing Collateral.

18. In addition, the Collateral allegedly included:

(a) the land, improvements and real and personal property of the real properties (the "Real Properties") listed on Schedule A annexed hereto; and

(b) all fixtures to the extent part of the Real Properties.

19. The Collateral secured the obligations due under the Notes.

20. The Debtors did not grant the Pre-Petition Lenders liens or security interests in their equipment, machinery, furniture, vehicles, rolling stock, bank accounts, life insurance policies and general intangibles (including, without limitation, intellectual property).

21. By Order entered by the Bankruptcy Court, the Debtors were authorized to sell substantially all of their assets to Harim USA, Ltd., a Delaware corporation ("Harim"), for $48 million, plus additional sums for inventory (the "Purchase Price") in accordance with the terms of the asset purchase agreement (the "Asset Sale").

22. The Asset Sale to Harim closed on September 6, 2011, and Harim remitted payment of $45,199,002.22 to the Debtors. Per the asset purchase agreement, additional sums for the purchase of inventory are due within fifteen (15) business days of closing after an accounting of inventory is completed.

23. Subsequent to the closing, the Debtors distributed a portion of the sale proceeds, as follows:

| | |
|---|---|
| First American Title Insurance Company (realty transfer taxes, prorated taxes, and real estate recording fees, including ½ of realty transfer taxes payable by Sellers and any Prorated Taxes payable by Sellers) | $434,648.01 |
| Young Conaway Stargatt & Taylor, LLP (funds payable pursuant to the Settlement Agreement to be entered into among Purchaser, Allen, and the State of Maryland Department of the Environment) | $100,000.00 |
| Mountaire Corporation (break-up fee and expense reimbursement) | $2,100,000.00 |
| MidAtlantic Farm Credit (payoff of DIP financing facility) | $12,732,261.31 |
| BMO Capital Markets (investment banker success fee) | $1,528,999.77 |
| Allen's Hatchery, Inc. (for payment of cure amounts on assumed and assigned executory contracts) | $1,291,295.03 |

24. The remaining balance of the closing proceeds in the sum of $27,011,798.10, plus the $3 million cash deposit previously remitted by Harim remain with the Debtors' estates.

Pursuant to the Final DIP Order, upon the filing of a complaint challenging the liens of the Pre-Petition Lenders, such remaining sale proceeds may not be turned over to the Pre-Petition Lenders for satisfaction of the Pre-petition Obligations (as defined in the Final DIP Order) pending resolution of the lien challenge action or further order of the Court. *See* Final DIP Order, ¶¶ 7(b), 8(b).

## COUNT ONE
### (Objection to Nature, Extent and Validity of Alleged Liens)

25. Plaintiff repeats and realleges the foregoing allegations as if set forth at length herein.

26. The Debtors did not grant the Pre-Petition Lenders liens or security interests in their equipment, machinery, furniture, vehicles, rolling stock, bank accounts, life insurance policies and general intangibles (including, without limitation, intellectual property).

27. The Pre-Petition Lenders have not received and have not properly filed valid mortgages on the Real Properties and fixtures located thereon.

28. Plaintiff seeks a determination as to the nature, extent and validity of MAFC's alleged liens in the foregoing assets of the Debtors.

**WHEREFORE**, Plaintiff demands judgment pursuant to Bankruptcy Code §§ 506(b), 506(d), 544, and 550, in its favor and against MAFC as follows:

(a) directing MAFC to prove the validity and extent of their security interests in and/or liens;

(b) directing that all Asset Sale proceeds from unencumbered assets shall be turned over to the Debtors for distribution to creditors of their estates;

(c) directing that any lien or security interest granted to MAFC which was not duly perfected as of the Petition Date or which is voidable under applicable law be declared null and void and/or avoided and that all such alleged collateral and proceeds thereof are

unencumbered assets of the bankruptcy estates, and shall be turned over to the Debtors' for distribution to creditors of their estates;

(d) awarding costs of suit and reasonable attorneys' fees; and

(e) awarding such other and further relief as the Court deems equitable and proper.

## COUNT TWO
**(Valuation of the Assets Not Encumbered by Pre-Petition Lenders' Liens and Allocation of Purchase Price)**

29. Plaintiff repeats and realleges the foregoing allegations as if set forth at length herein.

30. The Debtors did not grant the Pre-Petition Lenders liens or security interests in their equipment, machinery, furniture, vehicles, rolling stock, bank accounts, life insurance policies and general intangibles (including, without limitation, intellectual property).

31. The Pre-Petition Lenders have not received and have not properly filed valid mortgages on the Real Properties and fixtures located thereon.

32. The Debtors' unencumbered equipment, machinery, furniture, vehicles, rolling stock, general intangibles (including, without limitation, intellectual property) and Real Properties, were among the assets sold to Harim in the Asset Sale for the Purchase Price.

**WHEREFORE**, Plaintiff demands judgment pursuant to Bankruptcy Code § 506(a), in its favor and against MAFC as follows:

(a) determining the value of the unencumbered equipment, machinery, furniture, vehicles, rolling stock, general intangibles (including, without limitation, intellectual property) and Real Properties;

(b) determining the allocation of the Purchase Price attributable to the unencumbered equipment, machinery, furniture, vehicles, rolling stock, general intangibles (including, without limitation, intellectual property) and Real Properties;

(c) directing that all Asset Sale proceeds from unencumbered assets shall be turned over to the Debtors for distribution to creditors of their estates;

(d) awarding costs of suit and reasonable attorneys' fees; and

(e) awarding such other and further relief as the Court deems equitable and proper.

**COUNT THREE**
**(Surcharge of MAFC's Collateral Pursuant to 11 U.S.C. § 506(c))**

33. Plaintiff repeats and realleges the foregoing allegations as if set forth at length herein.

34. The Debtors' estates have incurred reasonable, necessary costs and expenses in connection with preserving and/or disposing of the Pre-Petition Lenders' Collateral.

35. The Pre-Petition Lenders have received direct benefits from the administration of these cases including, without limitation, the following: (i) collection of outstanding receivables; (ii) management and sale of the Debtors' inventory in the course of the operation of the Debtors' businesses to maximize recovery to the Pre-Petition Lenders; (iii) completion of a marketing and sale process to sell the Debtors' assets and businesses as a going concern that resulted in a stalking horse bid of $30 million for a portion of the Debtors' assets; and (iv) a successful auction that resulted in a highest and best bid that exceeded the stalking horse bid by $18 million.

**WHEREFORE**, Plaintiff demands judgment pursuant to Bankruptcy Code § 506(c), in its favor and against MAFC:

(a) directing that the reasonable, necessary costs and expenses incurred preserving and/or disposing of the Pre-Petition Lenders' Collateral be surcharged against the Pre-Petition Lenders' Collateral;

(b) directing that any sums paid by the Debtors to MAFC, directly or indirectly, and applied by MAFC to satisfy prepetition obligations of the Debtors be returned to the Debtors' estates and avoided;

(c) awarding costs of suit and reasonable attorneys' fees; and

(d) awarding such other and further relief as the Court deems equitable and proper.

## RESERVATION OF RIGHTS

36. The within Complaint is being filed pursuant to the Final DIP Order and is not intended, and shall not be construed as, a waiver of the Committee's rights to assert additional causes of action unrelated to the causes of action set forth herein, or to amend this Complaint to assert different or additional causes of action relating to the causes of action set forth herein to the extent such amendment is appropriate.

Dated: September 12, 2011

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

/s/ *Thomas M. Horan*
Steven K. Kortanek (Del. Bar No. 3106)
Thomas M. Horan (Del. Bar No. 4641)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: skortanek@wcsr.com
E-mail: thoran@wcsr.com

-- and --

**LOWENSTEIN SANDLER PC**

Jeffrey D. Prol, Esq.
Bruce S. Nathan, Esq.
Timothy R. Wheeler, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel for the Official Committee of Unsecured Creditors*